Filed 11/18/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>LAURA ESMERELDA CONTRERAS,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>CURTIS DOWLING et al.,<br><br>      Defendants and Appellants.<br><br>_____/</td><td>A142646<br><br>(San Francisco County<br>Super. Ct. No. CGC09488551)<br><br>ORDER MODIFYING<br>OPINION AND DENYING<br>REHEARING</td></tr>
</table>

THE COURT:


IT IS ORDERED that the opinion in the above-captioned case, filed on October 26, 2016, is modified as follows:


On page 13, first line, delete footnote 6. In addition, add the following new paragraph before part III.A.:


In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 79.) Thus, the court is not limited to examining the allegations of the complaint alone but rather considers the pleadings and the factual material submitted in connection with the special motion to strike. (*Karnazes v. Ares* (2016) 244 Cal.App.4th 344, 353-354 [considering pleadings, a declaration, and emails attached thereto at first step of anti-SLAPP analysis]; see *Navellier, supra,* 29 Cal.4th at p. 90 ["Examination of

the relevant documents reveals that each of Sletten's acts (or omissions) about which plaintiffs complain falls squarely within the plain language of the anti-SLAPP statute."].) We therefore examine the materials in the record to determine whether Contreras's cause of action against Dowling arises from protected activity.

On page 16, after the first paragraph, add the following:

Moreover, the evolution of Contreras's pleadings in this case dispels any doubt about whether her cause of action against Dowling arises from protected activity. Although Contreras's brief does not discuss the allegations of the FAC, that pleading claimed: "In April 2009, Mr. Stuart, acting as the agent of the Butterworths, *who were advised by Mr. Dowling and Beckman, Marquez & Dowling LLP,* at least twice entered Ms. Contreras's Apartment in her absence without proper notice or permission[.]" (Italics added.) This allegation plainly indicated Dowling and his firm were being sued for the advice rendered to their clients. Indeed, Dowling filed a special motion to strike the FAC, and he referred specifically to the quoted language to demonstrate that Contreras's cause of action against him arose out of protected activity. This motion was ultimately ruled moot because the trial court had granted the Butterworths' motion to strike the FAC.

In June 2012, when Contreras filed the TAC, she changed the relevant language to remove the verb "advised," alleging instead: "In April 2009, Mr. Stuart, acting as the agent of the Butterworths and *aided and incited* by Mr. Dowling and Beckman, Marquez & Dowling LLP, at least twice entered Ms. Contreras's Apartment in her absence without proper notice or permission[.]" (Italics added.) Still later, in the Complaint, this key language was altered yet again to allege that "[i]n April 2009, Mr. Stuart, acting as the agent of the Butterworths *and aided and abetted by Mr. Dowling and Beckman, Marquez*

2

*& Dowling LLP pursuant to an agreement among them,* at least twice entered Ms. Contreras's Apartment in her absence without proper notice or permission[.]" (Italics added.)

"A plaintiff . . . may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint . . . in response to the motion." (*JKC3H8 v. Colton* (2013) 221 Cal.App.4th 468, 477-478; see *Schaffer v. City and County of San Francisco* (2008) 168 Cal.App.4th 992, 1005 [plaintiff could not escape anti-SLAPP procedures by amending complaint to allege conspiracy].) Whether Contreras should have been permitted to amend her pleadings after Dowling filed his first motion to strike is not before us. (Cf. *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1294; *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073.) Nevertheless, we must consider her earlier pleadings in determining whether her claim against Dowling arises out of protected activity. (§ 425.16, subd. (b)(2) ["In making its determination, the court shall consider the pleadings"].) The allegations of the FAC are powerful evidence that her cause of action arises out of Dowling's advice to his clients.

On page 16, delete the first sentence of the second paragraph which reads: "Indeed, Contreras's own contentions . . ." and replace with "Further evidence comes from Contreras's own contentions."

The petition for rehearing filed by respondent is denied. There is no change in the judgment.

Dated _____                                         _____ P.J.

3

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LAURA ESMERELDA CONTRERAS,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CURTIS DOWLING et al.,<br><br>        Defendants and Appellants. | A142646<br><br>(San Francisco County<br>Super. Ct. No. CGC09488551) |

This case is before us for a third time. In this latest chapter, Curtis Dowling, a lawyer employed by the firm of Beckman, Marquez & Dowling (collectively Dowling), appeals from an order of the superior court denying his special motion to strike the complaint filed against him by respondent Laura Esmerelda Contreras. (Code Civ. Proc., § 425.16.)[1] In the litigation below, Contreras sued her landlords Gordon and Carol Butterworth, their son, Steven Stuart, and the Butterworths' former attorneys for tenant harassment and other causes of action arising out of allegedly illegal entries into Contreras's apartment. After Dowling assumed representation of the Butterworths, Contreras amended her pleadings to name him as a defendant. She alleged Dowling had aided and abetted his clients' wrongful entries.

Dowling filed a special motion to strike, contending the only actions he was alleged to have taken involved his representation of the Butterworths, actions he argued constituted protected activity under section 425.16. The trial court denied Dowling's motion, ruling that Contreras's action did not arise out of protected activity because she

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

1

sought to hold him liable not for his activities as an attorney, but only for the underlying wrongful conduct of the Butterworths. In addition, relying in part on our opinions in the two prior appeals in this case, the trial court found Contreras had established a probability of prevailing on the merits of her complaint. Furthermore, because it found Dowling's motion frivolous, it granted Contreras's motion for sanctions.

We conclude the trial court erred in denying Dowling's special motion to strike. Contreras's cause of action against Dowling arises out of protected activity, because the only actions Dowling himself is alleged to have taken are all communicative acts by an attorney representing clients in pending or threatened litigation. Such acts are unquestionably protected by section 425.16. Bare allegations of aiding and abetting or conspiracy do not suffice to remove these acts from the protection of the statute. Moreover, Contreras cannot demonstrate a probability of prevailing on the merits of her cause of action, because Dowling's communicative acts are within the scope of the litigation privilege codified in Civil Code section 47, subdivision (b).

Since we hold the trial court should have granted Dowling's special motion to strike, it necessarily follows that the motion was not frivolous. We must therefore reverse the trial court's award of sanctions against Dowling. For the same reason, we deny Contreras's motion for sanctions based on Dowling's filing of an allegedly frivolous appeal. We will remand for the entry of an order granting the special motion to strike and for an award of attorneys fees to Dowling as prevailing party.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the complaint, declarations, and evidence submitted in connection with the special motion to strike. (See § 425.16, subd. (b)(2); *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1175.) In accordance with our standard of review of orders denying such motions, our statement of facts accepts as true the evidence favorable to Contreras. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis Realty*).)

2

*Contreras's Occupancy of the Apartment and the Unlawful Detainer Actions*

Gordon and Carol Butterworth own a house in San Francisco, which they leased to Jonah Roll and Katia Fuentes. During their tenancy, Roll and Fuentes built an unauthorized, separate dwelling unit in the garage of the Butterworth's house. Fuentes then rented this unauthorized unit to Contreras, who moved into the unit in September 2006.

In May 2008, Roll and Fuentes moved out of the property. After they departed, the Butterworths asked Contreras to vacate the garage unit, which they contended was illegal. When Contreras refused to vacate, the Butterworths hired former defendant, attorney Sami Mason to assist in evicting Contreras. Mason subsequently brought two unsuccessful unlawful detainer actions against Contreras.

After Mason's two unsuccessful unlawful detainer actions, the Butterworths hired Dowling to serve as their counsel. On April 27, 2009, the Butterworths, now represented by Dowling, served Contreras with notice under Civil Code section 1940.6, indicating they intended to remove the garage unit from their house. Two days later, Contreras's counsel, Charles M. Schaible, sent a letter directly to the Butterworths regarding Contreras's occupancy of the premises. On May 11, 2009, Dowling responded to Schaible's letter, informing counsel he was representing the Butterworths and responding to the various claims raised by Schaible involving Contreras's tenancy and occupation of the premises.

On June 3, 2009, Dowling, on behalf of the Butterworths, served Contreras with a 60-day notice of termination of tenancy under San Francisco Administrative Code section 37.9(a)(10). On August 5, 2009, Dowling filed an unlawful detainer action against Contreras in a case entitled *Butterworth v. Contreras, et al.,* San Francisco County Superior Court, case No. 630413. At some time thereafter, Contreras vacated the unit.

*The Initial Complaint and Contreras I*

Meanwhile, on May 19, 2009, Contreras filed the original complaint against the Butterworths; their son and property manager, Steven Stuart; their former attorney, Sami

3

Mason; and Roll and Fuentes. The complaint included a cause of action for tenant harassment. Not long after Dowling appeared as counsel for the Butterworths, Contreras filed a first amended complaint (FAC) alleging the same causes of action as contained in her original complaint, but adding Dowling and his law firm, Beckman, Marquez & Dowling LLP, as defendants. The first amended complaint included the same allegations of tenant harassment against the Butterworths and Stuart, but added allegations that Dowling had "acted in violation" of San Francisco's tenant harassment ordinance. (See S.F. Admin. Code § 37.10(B).)

The Butterworths responded to the first amended complaint by filing an anti-SLAPP motion, which the trial court granted in part, striking Contreras's cause of action for wrongful eviction. Contreras and the Butterworths then filed cross-appeals in this court (No. A127379). We issued our opinion in those appeals on June 30, 2011 (*Contreras I*). We reversed the trial court's order striking the wrongful eviction cause of action from the FAC but affirmed the remainder of the trial court's ruling.

In *Contreras I,* there was no dispute that all of Contreras's causes of action arose, at least in part, from protected conduct, and thus the first prong of the anti-SLAPP analysis was satisfied with respect to all three causes of action. Turning to the second prong of the analysis—whether Contreras had demonstrated a probability of prevailing on the merits of her claim for tenant harassment against the Butterworths—we observed that her claim was based on allegations of both protected and unprotected conduct, and thus her claim was " 'mixed.' " Because Contreras presented evidence that the Butterworths had engaged in conduct unprotected by the anti-SLAPP statute, we concluded she had demonstrated a probability of prevailing on her tenant harassment claim.

4

*The Third Amended Complaint and Contreras II*

Contreras filed a third amended complaint (TAC) on June 27, 2012.**2** The TAC alleged a cause of action for tenant harassment against the Butterworths, attorney Mason, Stuart, Dowling, and the Firm. Dowling was alleged to have "aided and incited . . . Stuart, who was acting as the agent of the Butterworths, to violate [San Francisco Administrative Code] sections 37.10B(a)(4), (5) and (10) by entering . . . Contreras' Apartment in her absence, without proper notice or permission, by breaking or causing to be broken the lock on the Apartment door[.]" Dowling was also alleged to have attempted to deny that an unlawful entry had occurred, "despite [his] direct involvement in that unlawful entry." Dowling's conduct was further alleged to have violated not only the San Francisco Administrative Code but also various state statutes.

Stuart filed an anti-SLAPP motion in response to the TAC, and after the trial court denied the motion, he appealed to this court (No. A137957). On October 25, 2013, we issued our opinion in Stuart's appeal (*Contreras II*). We there discussed *Contreras I,* explaining that our earlier opinion had held "Contreras's claims for wrongful eviction and tenant harassment . . . arose out of Stuart's alleged unlawful entry into [Contreras's] [a]partment[.]" Furthermore, our prior opinion established that Contreras had "stated a sufficient prima facie case that the Butterworths are liable for their tortious conduct." Nevertheless, the trial court was still obligated to engage in a separate anti-SLAPP analysis with respect to Contreras's claims against Stuart by determining whether those claims arose out of protected activity, and if so, whether Contreras had demonstrated a probability of prevailing on them. We concluded Stuart had forfeited any claim that his conduct arose out of protected activity, because he had not addressed the first prong of the anti-SLAPP analysis in his opening brief. We therefore affirmed the trial court's denial of Stuart's motion to strike.

---

**2** For reasons not apparent from the record, Contreras filed no second amended complaint.

*The Fourth Amended Complaint*

On February 15, 2013, Contreras filed her fourth amended complaint, which is the operative pleading in this case (the Complaint). With regard to Dowling, the Complaint alleges that "[i]n April 2009, . . . Stuart, acting as the agent of the Butterworths and aided and abetted by . . . Dowling . . . pursuant to an agreement among them, at least twice entered . . . Contreras's Apartment in her absence without proper notice or permission, in violation of Civil Code sections 1954 and 1940.2, Code of Civil Procedure section 1959, San Francisco Administrative Code sections 37.9(f) and 37.10(B), and Penal Code section 418, in a continuing and wrongful attempt to cause Ms. Contreras to surrender possession of the Apartment by means of intimidation and the infliction of emotional distress."

Like the TAC, the Complaint alleged a cause of action for tenant harassment. The cause of action describes the conduct constituting the claimed harassment—the Butterworths, aided and abetted by their attorney, Mason, and Stuart, interfered with Contreras's utilities, accepted but did not cash rent checks, and entered the premises on multiple occasions without proper notice and in Contreras's absence. Dowling was alleged to have "aided, abetted, and encouraged" Stuart's unlawful entries into Contreras's apartment "pursuant to an agreement between . . . Dowling . . . , the Butterworths, and . . . Stuart to force . . . Contreras from her [a]partment." They also allegedly agreed to seek to conceal evidence of the claimed unlawful entries, and if that attempt proved unsuccessful, "they would seek to exculpate themselves by denying that their conduct was illegal." To achieve this end, Dowling and the Firm "falsely contended that the first illegal entry was not illegal, and denied that the second illegal entry had even occurred." These actions were further alleged to have violated the San Francisco Administrative Code, as well as Civil Code sections 1940.2 and 1954, Code of Civil Procedure section 1959, and Penal Code section 418.

*Dowling's Anti-SLAPP Motion*

On March 28, 2014, Dowling filed a motion to strike pursuant to section 425.16. Contreras opposed the motion and also filed a motion for sanctions against Dowling, claiming his anti-SLAPP motion was frivolous. To support her claim that Dowling had committed wrongful conduct, Contreras cited a letter from Dowling to her counsel relating to the underlying proceedings. She also relied on an excerpt from Stuart's deposition testimony in the case in which Stuart stated he had hired a locksmith to enter Contreras's apartment "on the advice of counsel," then identified the counsel to have been Dowling.

The trial court held a hearing on Dowling's motion to strike on May 20, 2014. The trial court denied Dowling's motion, ruling that the "complaint as drafted charges defendants not with whatever advice (not mentioned in the complaint) defendants may have given to [the] Butterworths and Stuart, but with the actual conduct of the Butterworths and Stuart in breaking into Contreras's unit." In an apparent reference to our opinions in *Contreras I* and *Contreras II,* the trial court noted that we had twice determined that the unlawful entry did not arise out of protected activity. The court went on to find Contreras had provided sufficient evidence under the second prong of the anti-SLAPP analysis regarding tenant harassment and aiding and abetting.

The trial court granted Contreras's motion for sanctions against Dowling, finding that the motion to strike had been filed in violation of section 128.7(b)(2). It explained that "[u]nder the existing authorities, law of the case and allegations in the complaint, aiding and abetting an illegal entry is not protected activity within the meaning of . . . section 425.16."

On July 17, 2014, Dowling filed his notice of appeal. On June 24, 2015, Contreras filed a motion seeking sanctions against Dowling for filing a frivolous appeal.[3]

---

[3] Contreras has settled her claims with the other defendants. The only remaining aspect of this case, as concerns Dowling, is Contreras's cause of action for tenant harassment against him and his firm.

7

Dowling contends the trial court erred by failing to analyze whether his conduct, as opposed to that of his clients, constituted protected activity for purposes of section 425.16. It also erred, he argues, by finding Contreras had established a probability of prevailing on her claim against him, because, among other reasons, the litigation privilege of Civil Code section 47, subdivision (b) provides a complete defense to liability. We will address the parties' arguments after explaining the law governing anti-SLAPP motions and our standard of review.

I.      *Governing Law and Standard of Review*

A strategic lawsuit against public participation, or SLAPP suit, is one which "seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 (*Rusheen*).) Section 425.16, the anti-SLAPP statute, provides a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.[4] (*Ibid.*) The statute "authorizes a defendant to file a special motion to strike any cause of action arising from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1546-1547, fn. omitted (*Haight Ashbury*).) When a special motion to strike is filed, "the trial court evaluates the merits of the plaintiff's claim using a summary-judgment-like procedure at an early stage of the litigation." (*Wallace v. McCubbin, supra,* 196 Cal.App.4th at pp. 1180-1181.)

Section 425.16 requires the trial court to engage in a two-step process in ruling on a special motion to strike. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) "First, the defendant must establish that the challenged claim arises from activity protected by

---

[4] Section 425.16 provides in pertinent part: "(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)  "If the plaintiff fails to do so, the motion to strike is granted and the prevailing defendant is entitled to recover his or her attorney fees and costs.  (§ 425.16, subd. (c).)" (*Wallace v. McCubbin, supra,* 196 Cal.App.4th at p. 1181.)

At the first step of the anti-SLAPP analysis, a court considers "whether the challenged claims arise from acts in furtherance of the defendants' right of free speech or right of petition under one of the categories set forth in section 425.16, subdivision (e). [Citation.]  In doing so, '[w]e examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies . . . .' [Citation.]" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 209 (*Finton Construction*).)  The "gravamen is defined by the *acts on which liability is based,* not some philosophical thrust or legal essence of the cause of action." (*Wallace v. McCubbin, supra,* 196 Cal.App.4th at p. 1190.)

At the second step of the analysis " 'a plaintiff . . . must " 'state[] and substantiate[] a legally sufficient claim.' " [Citation.]  Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.]  'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.]  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' [Citation.]" (*Oasis Realty, supra,* 51 Cal.4th at p. 820.)

"An anti-SLAPP motion is an evidentiary motion." (*Finton Construction, supra,* 238 Cal.App.4th at p. 213.)  Consequently, "[t]he prima facie showing of merit must be made with evidence that is admissible at trial.  [Citation.]  Unverified allegations in the

9

pleadings or averments made on information and belief cannot make the showing. [Citations.]"  (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289.)

We review orders granting or denying a special motion to strike under section 425.16 de novo.  (*Wallace v. McCubbin, supra,* 196 Cal.App.4th at p. 1181.)

II.      *The Effect of Contreras I and Contreras II*

Before turning to the parties' arguments, we must address a preliminary issue.  In denying Dowling's special motion to strike, the trial court remarked that we had already determined Contreras's cause of action against Dowling was not based on protected activity.  In this court, the parties make arguments regarding the effect of our prior decisions.  We will therefore briefly explain their significance to the issues in this appeal.  In doing so, we largely reiterate what we said in *Contreras II*.

In *Contreras I,* we considered cross-appeals from an order granting in part and denying in part the Butterworths' special motion to strike Contreras's complaint.  We held that Contreras's claims against the Butterworths for malicious prosecution, wrongful eviction, and tenant harassment all arose, at least in part, from protected activity.  The first part of the anti-SLAPP test was thus satisfied with respect to all of those causes of action, and our focus was on the second step of the test—whether Contreras had established a probability of prevailing on any of those causes of action.  We noted Contreras's causes of action for tenant harassment and wrongful eviction were "mixed" in that they were based on allegations of both protected and unprotected activity.  We concluded, however, that she had shown a probability of prevailing based on the allegations of unprotected conduct.

In *Contreras II,* we considered Stuart's appeal from the trial court's denial of his special motion to strike.  The then-operative complaint alleged "Stuart aided and abetted the Butterworths in some of the wrongful conduct that gave rise to Contreras's action against them."  Our opinion discussed the effect of *Contreras I* on Stuart's appeal.  We explained, "*Contreras I* establishes that Contreras has demonstrated a probability of prevailing on her claims against the Butterworths for malicious prosecution, tenant harassment, and wrongful eviction.  [Citation.]  It does not mean that the court below was

10

relieved of the obligation to determine whether Contreras's claims against Stuart arise from protected activity, and if they do, of determining whether she has a reasonable probability of prevailing on them." We went on to hold Stuart had forfeited his argument that Contreras's claims against him arose from protected activity, because his opening brief did not even address the first prong of the section 425.16 analysis. In dictum, we noted we had already held that some of the Butterworths' actions did not arise from protected activity, and thus Stuart's alleged aiding and abetting of those actions did not arise out of protected activity. But since Stuart had not met his threshold burden of showing her claims against him arose out of protected activity, we had no need to consider whether Contreras had demonstrated a probability of prevailing on those claims. (See *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1290 [where movant failed to show suit was based on protected activity, court had no need to consider whether opposing party had demonstrated she was likely to succeed on the merits].)

Contreras contends the holdings in *Contreras I* and *II* are applicable here as law of the case. She therefore argues those cases establish that Dowling's alleged "conspiracy in [the Butterworths'] actions does not arise out of protected activity." She acknowledges their holdings do not bind him, however, since he was not a party to those appeals. Our prior cases are of limited relevance for a number of reasons. First, they hold only that some of the *Butterworths'* actions do not arise out of protected activity. They did not rule on any matter related to *Dowling's* conduct. Contreras must still carry the burden of proving her case against him, and we must still examine her specific allegations and factual showing with respect to Dowling. (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 20.) Second, *Contreras II's* brief discussion of Stuart's alleged aiding and abetting "embodied dictum rather than a principle necessary to our decision[.]" (*City of San Diego v. Board of Trustees of California State University* (2015) 61 Cal.4th 945, 958.) It is therefore binding on no one. (E.g., *Simmons v. Superior Court* (1959) 52 Cal.2d 373, 378 ["Incidental statements or conclusions not necessary to the decision are not to be regarded as authority."].) Finally, a legal determination is law of the case and " ' "controls the outcome only if the evidence on retrial or rehearing of an issue is

11

substantially the same as that upon which the appellate ruling was based. [Citations.]" ' "
(*Investors Equity Life Holding Co. v. Schmidt* (2015) 233 Cal.App.4th 1363, 1377.)
Since Contreras's case against Dowling arises from different facts, the holdings of
*Contreras I* and *II* do not dictate the result here.

III.     *Contreras's Cause of Action Against Dowling Arises from Protected Activity.*

The parties disagree sharply on whether Contreras's cause of action against
Dowling arises out of activity protected by section 425.16. Under that section, "[a] cause
of action against a person *arising from any act of that person* in furtherance of the
person's right of petition or free speech under the United States Constitution or the
California Constitution in connection with a public issue shall be subject to a special
motion to strike, unless the court determines that the plaintiff has established that there is
a probability that the plaintiff will prevail on the claim."[5] (§ 425.16, subd. (b)(1), italics
added.) As the italicized language indicates, "[t]he anti-SLAPP statute's definitional
focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity*
that gives rise to his or her asserted liability—and whether that activity constitutes
protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92
(*Navellier*).)

"[F]or anti-SLAPP purposes [the] gravamen [of plaintiff's cause of action] is
defined by the *acts on which liability is based*[.]" (*Wallace v. McCubbin, supra,* 196
Cal.App.4th at p. 1190.) To determine the gravamen of Contreras's cause of action, we
"must examine the allegedly wrongful conduct itself, without particular heed to the form
of action within which it has been framed." (*Peregrine Funding, Inc. v. Sheppard Mullin
Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671 (*Peregrine Funding*).) The

---

[5] As used in this section, an " 'act in furtherance of a person's right of petition or free
speech under the United States or California Constitution in connection with a public
issue' includes: (1) any written or oral statement or writing made before a legislative,
executive, or judicial proceeding, or any other official proceeding authorized by law, (2)
any written or oral statement or writing made in connection with an issue under
consideration or review by a legislative, executive, or judicial body, or any other official
proceeding authorized by law . . . ." (§ 425.16, subd. (e).)

first prong of the anti-SLAPP analysis involves two related inquiries: (1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities.[6] (*Haight Ashbury, supra,* 184 Cal.App.4th at p. 1547; *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479.)

A.      *Dowling's Activities*

To summarize, the Complaint alleges Dowling: (1) aided and abetted Stuart's allegedly unlawful entries into her apartment pursuant to an agreement among Stuart, the Butterworths, and Dowling; (2) agreed with Stuart and the Butterworths to conceal evidence of the illegal entries from Contreras and to seek to exculpate defendants by denying their conduct was illegal; and (3) falsely contended in his letter to Schaible that Stuart's first entry was not illegal and falsely denied the second entry had taken place. The factual support Contreras offered in support of these claims consisted of Dowling's May 11, 2009 letter to her counsel, Schaible, and the excerpt of Stuart's deposition in which he stated that on Dowling's advice, he had hired a locksmith to open the door to Contreras's apartment.

B.      *There Is No Dispute That Dowling's Conduct as an Attorney Is Protected.*

Although she cites Dowling's letter to Schaible and his advice to Stuart as factual support, ". . . Contreras does not contend that such communications are independently actionable." Nor could she. "Under the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute." (*Cabral v. Martins, supra,* 177 Cal.App.4th at pp. 479-480.) Thus, Dowling's letter to Schaible, written after the Butterworths had filed two unlawful detainer actions against Contreras and responding to Contreras's claims against his

---

[6] "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 79.)

clients, is unquestionably protected activity under section 425.16. (See, e.g., *GeneThera, Inc. v. Troy & Gould Professional Corp.* (2009) 171 Cal.App.4th 901, 908 (*GeneThera*) ["An attorney's communication with opposing counsel on behalf of a client regarding pending litigation directly implicates the right to petition and thus is subject to a special motion to strike."].) Likewise, the advice Dowling may have communicated to Stuart or the Butterworths in connection with the case is also protected activity under the statute. (See *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 811 (*Bergstein*) [allegedly tortious activity "centered in defendants' role as counsel" was protected litigation activity]; *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 489 [attorney's communications with client about pending litigation are protected activity].) In sum, to the extent the Complaint describes actions actually taken *by Dowling himself,* it is undisputed all of those actions constitute protected activity under section 425.16, subdivision (e).

C.   *Contreras's Cause of Action Against Dowling Arises from Protected Activities.*

Contreras does not contest the protected character of Dowling's activities but argues she is not seeking to hold Dowling liable for any actions he took as attorney for the Butterworths. Instead, she claims, she seeks to hold Dowling liable as a co-conspirator in his clients' allegedly illegal entries into her apartment.[7] As Contreras puts it, "the Dowling Defendants are liable not for what they did to come within the ambit of the conspiracy, but for the underlying misconduct of the Butterworths."

Contreras misunderstands the applicable law. Conspiring in or aiding and abetting tenant harassment is the cause of action Contreras asserts, not the specific acts of alleged wrongdoing giving rise to the Complaint's third cause of action. *Bergstein* illustrates this

---

[7] Although the Complaint seeks to hold Dowling liable on a theory of aiding and abetting, in the trial court and in this court Contreras has focused her arguments on Dowling's liability as a participant in a conspiracy. Liability for civil conspiracy differs conceptually from liability for aiding and abetting. (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823-824, fn. 10 (*Berg & Berg*).) Here, however, the issue is not the form of Contreras's action or her theory of liability but rather whether Dowling's activities are protected under section 425.16.

14

point. In that case, the plaintiffs sued lawyers who had represented their opponents in litigation over various financial transactions. Plaintiffs asserted the lawyers engaged in tortious conduct when they " 'solicited and received . . . confidential, privileged, and/or proprietary information' " from one of plaintiffs' former attorneys, Tregub, and "used that information 'in devising the legal strategy to be employed' in the litigation against plaintiffs." (*Bergstein*, *supra*, 236 Cal.App.4th at p. 797.) The attorneys filed a special motion to strike, and the trial court granted the motion, concluding that the complaint arose from protected activity. (*Ibid*.)

On appeal, the plaintiffs claimed the attorney defendants were not being sued for their actions as litigation counsel or for any written or oral statement made in a judicial proceeding. (*Bergstein, supra,* 236 Cal.App.4th at p. 811.) Instead, the plaintiffs argued the attorney defendants were being sued for, among other things, the unprotected conduct of aiding and abetting the breach of Tregub's fiduciary duties to the plaintiffs. (*Ibid*.) The appellate court rejected this argument, explaining that aiding and abetting Tregub's breach of fiduciary duties was simply the cause of action the plaintiffs asserted, "not the 'specific acts of alleged wrongdoing' that give rise to those causes of action." (*Ibid*.) It noted, "the factual basis for defendants' allegedly tortious activity is centered in defendants' role as counsel[.]" (*Ibid*.)

In reaching this conclusion, the *Bergstein* court focused on the actions of the attorney defendants themselves, not on the conduct they were alleged to have aided and abetted. (*Bergstein, supra,* 236 Cal.App.4th at pp. 811-813.) Similarly, in *Cabral v. Martins, supra,* 177 Cal.App.4th 471, the court examined the actions taken by the attorney defendants to determine whether those actions were protected activity for purposes of the anti-SLAPP statute. (*Id.* at p. 479.) It did so despite the plaintiff's claim that the attorney defendants were liable for having knowingly assisted their clients in evading child support obligations.[8] (*Id.* at pp. 475, 483.)

---

[8] Contreras contends these cases are distinguishable because the conduct the attorney defendants were alleged to have assisted was itself protected activity under section 425.16. In her view, the protected activity in *Bergstein* was the alleged

The analysis of these cases applies here. As stated above, conspiring in or aiding and abetting tenant harassment is merely the cause of action Contreras asserts. (*Bergstein, supra,* 236 Cal.App.4th at p. 811.) In deciding whether her cause of action arises from protected activity, however, our focus is not on such labels but rather on Dowling's actual activities. (See *Cabral v. Martins, supra,* 177 Cal.App.4th at p. 479 [examining the "activities by the attorney respondents"].) Looking at the allegedly wrongful conduct itself and disregarding "the form of action within which it has been framed" (*Peregrine Funding, supra,* 133 Cal.App.4th at p. 671), we see Dowling's activities are all "centered in [his] role as counsel" for the Butterworths and Stuart. (*Bergstein, supra,* 236 Cal.App.4th at p. 811.) Thus, while the Complaint alleges Dowling aided and abetted his clients' entry into Contreras's apartment pursuant to an agreement among the defendants, the only *acts* Dowling has been shown to have committed were giving advice to a client and writing a letter to opposing counsel. These are unquestionably protected activities. (See *ibid.*; *Cabral v. Martins, supra,* 177 Cal.App.4th at pp. 479-483 [plaintiff's cause of action arose from attorneys' will revision, initiation of probate proceedings, and defense of judicial proceedings, despite claim that attorneys were assisting clients in evading child support statutes].)

Indeed, Contreras's own contentions demonstrate that her cause of action against Dowling arises out of his role as the Butterworths' attorney. In the court below and in this court, she has claimed Stuart entered her apartment "on [Dowling's] instruction[.]" Her brief further asserts Stuart "telephoned . . . Dowling from the threshold to inquire whether he should break down the door, or call a locksmith." While this does not accurately describe the evidence in the record,[9] it shows that Contreras's cause of action

---

" 'litigation attack' " on the plaintiffs, and in *Cabral v. Martins* it was the filing of a probate proceeding. (*Bergstein, supra,* 236 Cal.App.4th at p. 813; *Cabral v. Martins, supra,* 177 Cal.App.4th at p. 479.) In making this argument, Contreras again shifts the focus from the actions of the attorney defendants to the actions they allegedly assisted.

[9] As Dowling points out, the record contains no information about the advice he may have given to his clients. Thus, there is nothing to support Contreras's contention that Dowling instructed Stuart to enter her apartment. In deposition, Stuart stated only that on

16

against Dowling is indeed based on his "instruction" or advice to his clients. The effort to hold Dowling liable for that alleged advice belies Contreras's claim that her cause of action does not arise from Dowling's role as counsel for the Butterworths and Stuart.

Put another way, Contreras's cause of action against Dowling would have no basis in the absence of Dowling's protected activities. (See *Navellier, supra,* 29 Cal.4th at p. 90 [plaintiffs' claims against defendant would have no basis "but for" federal lawsuit between parties and defendant's actions in connection with federal litigation]; *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 269 [plaintiff's claims of gender discrimination would have no basis in the absence of defendants' protected activities].) This case is thus analogous to *Finton Construction, supra,* 238 Cal.App.4th 200 in which the plaintiff sued a law firm and individual attorneys claiming they had improperly retained a computer hard drive belonging to the plaintiff. (*Id*. at pp. 204, 207.) The Fourth District held that the acts alleged in the complaint arose out of the attorneys' representation of their clients. (*Id*. at p. 210.) As the court explained, "[t]he only reason the hard drive was ever turned over to defendants is because they were counsel in [the] matter." (*Ibid*.) In the case before us, Dowling's only demonstrated connections to the allegedly wrongful conduct of his clients are the actions he took in his role as their attorney. In short, like the attorneys in *Finton Construction,* it seems Dowling is being sued for representing his clients. (*Ibid*.)

D. *Contreras's Allegations of Conspiracy and Illegality Do Not Remove Dowling's Actions from the Protection of Section 425.16.*

Contreras cannot escape this conclusion simply by alleging conspiracy or aiding and abetting. It is settled that "a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a "

---

the advice of counsel, he had hired a locksmith to open the apartment door. There is no support for Contreras's claim that Stuart telephoned Dowling from the threshold of her apartment to inquire whether he should break down the door. Stuart did not say he called Dowling (or anyone else) from the threshold of her apartment, although he did say that at some unspecified point he had telephoned *the locksmith*. Stuart also did not indicate whether he had gotten the advice from Dowling by telephone or in person, nor did he say anything at all about breaking down the door.

'garden variety' " tort or contract claim when in fact the claim is predicated on protected speech or conduct." (*Trilogy at Glen Ivy Maintenance Assn. v. Shea Homes, Inc.* (2015) 235 Cal.App.4th 361, 368; see *Baral v. Schnitt, supra,* 1 Cal.5th at p. 392 ["the application of section 425.16 cannot reasonably turn on how the challenged pleading is organized"].) Conspiracy and aiding and abetting, the labels Contreras attaches to her claim, are no more than legal conclusions. (*State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 419 [allegations that named and unnamed defendants "conspired to conceal their improper loss valuations" amounted to "bare legal conclusions"].) Such terms have "no talismanic significance[.]" (*Berg & Berg, supra,* 131 Cal.App.4th at p. 824.) Here, Dowling himself is not alleged to have done anything "outside the scope of normal, routine legal services." (*Cabral v. Martins, supra,* 177 Cal.App.4th at p. 481.) Contreras does not claim he personally took part in the alleged wrongful entries, and the Complaint alleges no facts showing how Dowling might have assisted his clients' wrongful conduct.[10] Conclusory allegations of conspiracy or aiding and abetting do not deprive Dowling's actions of their protected status. (See *Flores v. Emerich & Fike* (E.D. Cal. 2006) 416 F.Supp.2d 885, 909 ["conclusory allegations" of conspiracy by attorneys "have no legal significance. It is not alleged that the [attorneys] independently converted the Flores' property, only that they conspired to do so. This is not a legally cognizable claim."].)

---

[10] Other than the letter to Schaible and the advice to Stuart, Contreras does not describe any actions by Dowling that would evidence either his participation in the alleged conspiracy or substantial assistance in the commission of the alleged tort. (See *Berg & Berg, supra,* 131 Cal.App.4th at p. 823 [conspiracy requires that "defendant had knowledge of and agreed to both the objective and the course of action that resulted in the injury"]; *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1145 (*Casey*) ["liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted"]; compare *Burtscher v. Burtscher* (1994) 26 Cal.App.4th 720, 727 [attorney's actions fell outside of normal legal services where she engaged in self-help to recover possession for clients by going to premises, calling a locksmith to open door, calling deputy sheriff who threatened occupant of premises with arrest for trespass, and arranging for removal of tenants' belongings].)

18

Equally unpersuasive is Contreras's reliance on the alleged illegality of the Butterworths' conduct. She contends the entries into her apartment constituted crimes. (See Pen. Code, § 418; S.F. Admin. Code § 37.10B(c)(2).) Thus, she argues, under *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*),[11] Dowling's special motion to strike was properly denied because section 425.16 does not protect conduct that is illegal as a matter of law. Here again, however, the only conduct Contreras discusses is that of the Butterworths; she says almost nothing about Dowling's participation in that conduct. The most she offers on this point is the claim that Dowling has "never denied either the fact of the break-in or [his] complicity in it[.]" But the facts alleged to show Dowling's complicity—his letter to opposing counsel and his advice to Stuart—are those involving his service as counsel. Moreover, according to Dowling's declaration, the only manner in which he has advised or assisted the Butterworths is in his capacity as their attorney. That assistance has consisted of drafting correspondence, the service of a notice of termination of tenancy, and the filing of an unlawful detainer action. As explained above, those are communicative acts protected under section 425.16, subdivision (e).[12] In addition, Dowling does not concede his conduct was illegal, and its illegality has not been "conclusively established by the evidence presented in connection with the motion to strike." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 285.)

---

[11] In *Flatley,* our Supreme Court held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley*, *supra*, 39 Cal.4th at p. 320.)

[12] Citing *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, Contreras appears to suggest Dowling's communications are not protected because they were made in furtherance of the alleged conspiracy. (See *id.* at pp. 1296-1297.) That case is distinguishable in that the statements at issue there were not communicative conduct by an attorney in the context of litigation. (Cf. *Haight Ashbury, supra,* 184 Cal.App.4th at p. 1548 [statements made in furtherance of alleged conspiracy to testify falsely in deposition are protected under § 425.16, subd. (e)(2)].)

"[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910-911.)

III.    *Contreras Cannot Establish a Probability of Prevailing on her Claim.*

Having determined that Contreras's cause of action against Dowling arises out of protected activity, we turn to the second step of the anti-SLAPP analysis: we must determine whether Contreras has demonstrated a probability of prevailing on the merits. (*Finton Construction, supra,* 238 Cal.App.4th at p. 211.)  " 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]'  [Citation.]" (*Ibid.*)  The trial court ruled Contreras had "provided sufficient evidence under the second prong re:  tenant harassment, aiding and abetting."

A.    *The Litigation Privilege Protects Dowling's Communicative Acts.*

Dowling contends Contreras cannot show a probability of success because her claim is barred by the litigation privilege of Civil Code section 47, subdivision (b), which provides:  "A privileged publication or broadcast is one made:  . . .  (b) In any . . . (2) judicial proceeding[.]" The litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."  (*Flatley, supra,* 39 Cal.4th at p. 323.) Contreras cannot establish a probability of prevailing if the litigation privilege precludes Dowling's liability on her claim.  (*Bergstein, supra,* 236 Cal.App.4th at p. 814.)

The litigation privilege applies "to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  "This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).)  " 'Any doubt about whether the privilege applies is

20

resolved in favor of applying it.' [Citation.]" (*Finton Construction, supra,* 238 Cal.App.4th at p. 212.)

As far as the applicability of the litigation privilege is concerned, this case is not a close one. The privilege has been held to cover precisely the type of communications at issue here, such as a lawyer's discussions with clients about potential litigation, the filing of pleadings, and letters to opposing counsel. (See *Rubin v. Green* (1993) 4 Cal.4th 1187, 1195 [privilege protected lawyers' meeting with potential clients to discuss merits of proposed lawsuit and filing pleadings in action]; *GeneThera, supra,* 171 Cal.App.4th at p. 910, fn. omitted [letter to counsel proposing settlement protected by litigation privilege, even if letter is "substantively at variance with the Rules of Professional Conduct"].) Thus, to the extent the Complaint alleges actions taken by Dowling himself, those actions fall within the ambit of the litigation privilege.

B. *Contreras's Claim of Conspiracy Does Not Vitiate the Litigation Privilege.*

Contreras contends the litigation privilege does not apply because Dowling's liability is not premised on his advice to the Butterworths but on his conspiracy in, or aiding and abetting of, his clients' illegal entries into her apartment. According to Contreras, "[t]he only role that the Dowling Defendants' advice plays in this action is as *evidence* of their concurrence with the Butterworths in the illegal entry." (See *Action Apartment, supra,* 41 Cal.4th at p. 1248 ["We have drawn 'a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication.' "].) This contention fails for two reasons.

First, Contreras's argument "contains the same flaw infecting [her] assertion that [her] claims do not arise from protected activity: the complaint itself plainly demonstrates otherwise." (*Bergstein, supra,* 236 Cal.App.4th at p. 814.) Contreras does not identify any conduct by Dowling that was not a communication made in connection with a judicial proceeding. (*Id*. at p. 815.) Simply claiming that Dowling's alleged conspiring or aiding and abetting "is 'non-communicative conduct' does not make it so." (*Ibid.*) Contreras devotes much of her brief to discussing the conduct of the Butterworths

21

and Stuart, but she fails to provide any record citations for *Dowling's* alleged noncommunicative conduct. (*Id.* at p. 814.)

Second, an anti-SLAPP motion is an evidentiary motion (*Finton Construction, supra,* 238 Cal.App.4th at p. 213), but Contreras fails to provide evidentiary support for her allegations of conspiracy or aiding and abetting. "Because civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it." (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333 (*Choate*).) "To prove a claim for civil conspiracy, [Contreras] was required to provide substantial evidence of three elements: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 (*Kidron*).) For liability to attach, knowledge of the planned tort must be combined with intent to aid in its commission. (*Id.* at p. 1582.) "While knowledge and intent 'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances' [citation], ' "[c]onspiracies cannot be established by suspicions. There must be some evidence. Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." ' [Citation.] An inference must flow logically from other facts established in the action."[13] (*Ibid.*)

To support her claim that Dowling concurred in the Butterworth's illegal entries, Contreras relies heavily on inferences she would have us draw from the *absence* of evidence. (See *Choate, supra,* 86 Cal.App.4th at p. 335 [refusing to infer existence of conspiracy from absence of evidence].) For example, she views Dowling's letter to Schaible as "admitting, without the slightest reservation or attempt to disclaim his

---

[13] To prove aiding and abetting, Contreras had to present proof that Dowling had actual knowledge of "the specific primary wrong" and substantially assisted in its commission. (*Casey, supra,* 127 Cal.App.4th at p. 1145.) "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." (*Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1326.) In this court she argues only that Dowling concurred in his clients' actions and is thus liable as a conspirator. We will therefore address the evidence offered as proof of the alleged conspiracy.

concurrence in it, that the first unlawful entry was the work of his clients." It is unclear why Contreras believes Dowling was required "disclaim his concurrence" in his clients' actions. His letter was a response to Schaible's discussion of Contreras's claims against the Butterworths and Stuart. Schaible did not contend Dowling was involved in the entry into Contreras's apartment. In fact, Schaible's letter did not even state that Dowling's clients had entered Contreras's apartment; it said only that "*someone* entered . . . Contreras's apartment by forcing the lock on the apartment door." (Italics added.) No inference can be drawn from Dowling's failure to "disclaim his concurrence."[14] (See *Kidron, supra,* 40 Cal.App.4th at p. 1582 [inference must flow logically from other facts established in the action].)

Finally, as she did in the court below, Contreras argues Dowling's concurrence in his clients' illegal entry into her apartment may be inferred from the existence of the attorney-client relationship itself. She reasons that such a relationship "typically is premised on an agreement between an attorney and his client to attain certain mutual objectives." In this case, the alleged mutual objective was to remove Contreras from her apartment. Contreras offers no authority to support her novel view of the attorney-client relationship. Indeed, she misconceives the nature of that relationship; it is generally one in which the attorney acts as agent for the client, who is the principal. (See, e.g., *Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403; 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 235, p. 309.) A lawyer works "to advance a *client's lawful objectives,* as defined by the client after consultation."[15] (Rest., Law Governing Lawyers, § 16(1), italics added.)

---

[14] In a closely related argument, Contreras contends Dowling's concurrence may be inferred from the fact that he has never denied his complicity, "but seek[s] only to shelter it behind the litigation privilege." The sole authority she offers in support of this argument is an irrelevant case involving a party who filed an answer that failed to deny the material allegations of the complaint and then failed to oppose a motion for summary judgment. (*Reich v. Yow* (1967) 249 Cal.App.2d 12, 13-14.) Clearly, that is not the situation before us.

[15] As the Restatement explains, "The lawyer's efforts in a representation must be for the benefit of the client [citation]. *A client-lawyer relationship is thus different from a*

23

We decline to infer Dowling's concurrence in his clients' acts from the mere existence of their attorney-client relationship. Contreras cites no authority holding that an attorney-client relationship is evidence of a conspiracy between the attorney and client, and our own research discloses none. Moreover, we share Dowling's expressed concern about the implications of such a holding. He contends there will be a chilling effect on attorneys if their communicative acts can be placed outside the protection of section 425.16 by the unadorned allegation that they conspired in their clients' torts. Contreras airily dismisses this concern, arguing "any chilling effect that conclusion may have on conspiracies between lawyers and their clients must be counted an unalloyed benefit." We are not so sanguine. "The fears of chilled speech and hindered justice are too much a part of our case law to be disregarded as unproved." (*McClatchey Newspapers, Inc. v. Superior Court* (1987) 189 Cal.App.3d 961, 971 [allegation of conspiracy to permit witness to make defamatory statements in deposition does not "pierce the protective shield" of Civ. Code, § 47].) We refuse Contreras's invitation to infer an attorney-client conspiracy from the mere existence of an attorney-client relationship.

C.       *Contreras's Authorities Are Distinguishable.*

The cases upon which Contreras principally relies are readily distinguishable. In both *United States Fire Ins. Co. v. Sheppard, Mullin, Richter & Hampton LLP* (2009) 171 Cal.App.4th 1617 (*U.S. Fire*) and *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032 (*California Back Specialists*), the actions sought to hold the attorney defendants liable for the attorneys' *own* conduct, not for the conduct of their clients. In *U.S. Fire,* an insurance company and former client of the defendant law firm alleged the firm had breached its duties of loyalty and confidentiality to the insurance company by taking on the representation of new clients with adverse interests.

---

*partnership entered into for mutual profit*; the lawyer may hope to further the lawyer's professional reputation and income through a representation, but may do so only as a by-product of promoting the client's success." (Rest., Law Governing Lawyers, § 16, com. c, italics added.)

24

(*U.S. Fire, supra,* 171 Cal.App.4th at p. 1622.)  The trial court granted the firm's special motion to strike, and the appellate court reversed, holding that the principal thrust of the insurance company's complaint was the firm's acceptance of representation adverse to its former client's interests.  (*Id.* at p. 1628.)  The complaint's reference to the firm's activities in representing its new clients in subsequent litigation was "only incidental to the principal thrust of the complaint."  (*Ibid.*)

Similarly, in *California Back Specialists,* a medical lien holder sued an attorney who had represented two personal injury plaintiffs to whom the lien holder had provided medical treatment.  (*California Back Specialists, supra,* 160 Cal.App.4th at p. 1035.)  The complaint alleged the attorney had failed to notify the lien holder of the settlement of the underlying personal injury action and had then disbursed the settlement proceeds without withholding the funds owed to the lien holder.  (*Ibid.*)  The appellate court affirmed the denial of the attorney's special motion to strike, holding the action did not arise out of protected activity.  (*Id.* at pp. 1036-1037.)  It explained that the anti-SLAPP statute does not apply where protected activity is only collateral or incidental to the purpose of the transaction or occurrence underlying the complaint.  (*Id.* at p. 1037.)  Thus, it concluded, "[the lien holder's] complaint is based on the underlying controversy between private parties about the validity and satisfaction of the liens.  These issues were never under consideration in any court or official proceedings until [the lien holder] filed the current action."  (*Ibid.*)  In other words, the lien holder's action arose not out of the attorney's representation of his personal injury clients, but rather out the attorney's own conduct in failing to honor and satisfy the medical liens.

*Kimmel v. Goland* (1990) 51 Cal.3d 202 (*Kimmel*), another case upon which Contreras relies, involved only the application of the litigation privilege and was not an anti-SLAPP case.  We find it relevant here, but not for the reasons Contreras cites.  In *Kimmel,* residents of a mobile home park, anticipating a suit against the park management, secretly recorded conversations they had with management representatives.  (*Id.* at pp. 206-207.)  The tape recordings were then transcribed by the residents' attorney, R. Richard Farnell.  (*Id.* at p. 207.)  After the residents filed suit against park

25

management, the latter discovered the existence of the tape recordings and filed a cross-complaint alleging a violation of Penal Code section 632, part of California's Invasion of Privacy Act.  (*Kimmel, supra,* 51 Cal.3d at p. 207.)  The cross-complaint alleged that "[a]lthough Farnell was not present during the actual recording of the conversations, he transcribed the tapes and 'furthered the unlawful agreement [to record the confidential conversations] by aiding, abetting, counseling, advising and encouraging' plaintiffs in their recording of the calls."  (*Id.* at pp. 207-208, fn. omitted.)  Prior to trial, the trial court dismissed the cross-complaint on the ground that the litigation privilege rendered the residents and Farnell immune from liability for the alleged violation of the privacy act.  (*Id.* at p. 208.)

The California Supreme Court concluded the litigation privilege was not applicable to the taping of confidential telephone conversations, because the relevant subdivision of Civil Code section 47 applied only to publications or broadcasts made in the course of a judicial proceeding.  (*Kimmel, supra,* 51 Cal.3d at p. 209.)  In the case before it, in contrast, "park management [sought] statutory damages under Penal Code section 637.2 not for injuries arising from the broadcast and publication of private conversations, but from the recording of them."  (*Id.* at p. 212.)  Although it held the litigation privilege did not apply to the tape recording of private conversations, the court noted, "our holding that the litigation privilege does not apply is limited to the injury resulting from plaintiffs' and Farnell's *conduct.  To the extent the complaint rests on Farnell's alleged communicative acts of 'counseling' and 'advising' his clients, the privilege is clearly operative.*"  (*Id.* at p. 208, fn. 6, italics added; see *Rubin v. Green, supra,* 4 Cal.4th at pp. 1195-1196 [explaining that *Kimmel* distinguished between attorney's conduct and communicative acts of advising and counseling clients].)  Thus, like *U.S. Fire* and *California Back Specialists, Kimmel* was a case in which liability was premised on the attorney's own noncommunicative conduct.  Although that conduct is unprotected by the litigation privilege, *Kimmel* holds the privilege immunizes a lawyer's act of advising and counseling a client, even when the lawyer is alleged to have aided and abetted the client in the claimed criminal misconduct.

26

Far from supporting Contreras's position, these cases only serve to illuminate the overarching defect in her argument. The courts in all of these cases concluded attorneys could be held liable for their own noncommunicative conduct. Further, the acts of advising and counseling clients and communicating regarding litigation are protected by the litigation privilege notwithstanding allegations that the attorney has aided and abetted or conspired with clients.

IV. *The Sanctions Award Must Be Reversed and the Motion for Sanctions for a Frivolous Appeal Denied.*

The lower court's award of sanctions under section 128.7 was based on its erroneous finding that Dowling's special motion to strike was frivolous. Thus, in addition to reversing its ruling on the motion to strike, "we must also necessarily conclude the court erred in awarding [Contreras] fees under the anti-SLAPP statute. Rather, because the court should have granted [Dowling's] motion, [Dowling] is entitled to an award of attorney fees and costs." (*County of Riverside v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 20, 32 [where reviewing court concluded trial court should have granted anti-SLAPP motion, award of attorney fees and costs to respondent under §§ 425.16, subd. (c)(1) and 128.5 must be reversed].) This includes an award of attorney fees incurred in connection with this appeal. (*Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1404 ["a defendant who prevails on a section 425.16 motion is entitled to an award of attorney's fees (§ 425.16, subd. (c)), including attorney's fees for the appeal"].)

Contreras has also filed a motion in this court seeking sanctions against Dowling for filing a frivolous appeal. "Our reversal of the trial court's ruling establishes that [Dowling's] appeal is meritorious and obviates any need to discuss the issue of sanctions." (*California Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.* (2002) 96 Cal.App.4th 598, 610; accord *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1434 [in light of reversal, respondent's request for sanctions "is 'obviously untenable' "].)

DISPOSITION

The orders denying Dowling's special motion to strike and granting Contreras's motion for sanctions are reversed. The matter is remanded to the trial court for entry of a new and different order granting Dowling's special motion to strike and for an award of attorney fees to Dowling as prevailing party, including attorney fees incurred in connection with this appeal. (§ 425.16, subd. (c)(1).)

Dowling is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Jones, P.J.

We concur:

_____
Needham, J.

_____
Bruiniers, J.

28

Superior Court of the County of San Francisco, No. CGC09488551, Paul H. Alvarado, Judge.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Michael C. Douglass and Patrick J. Kearns, for Defendants and Appellants.

Charles M. Schaible for Plaintiff and Respondent.