Filed 6/13/22  Allman v. Aldrich CA1/2
Order modifying opinion filed 5/31/22
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THOMAS ALLMAN,<br><br>      Petitioner and Respondent,<br><br>v.<br><br>ADAM ALDRICH,<br><br>      Appellant. | A160808<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CVPT-20-73829)<br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING |

BY THE COURT:

It is ordered that the opinion filed herein on May 31, 2022, be modified as follows:  The first full paragraph on page 22, beginning "Nor do we conclude . . ." is deleted and replaced with the following paragraph:

"Nor do we conclude that Defendant has demonstrated that the TRO provisions of section 527.6 are unconstitutional as applied to him.  In his opening brief on appeal, Defendant contends that Plaintiff's papers did not claim there were grounds to shorten or waive notice.  Defendant further contends that Plaintiff sought the TRO to prevent him from attending and speaking out at Plaintiff's retirement party, which did not constitute urgency justifying dispensation with proper notice.  The record is to the contrary."

1

The petition for rehearing is denied. This modification does not change the judgment.


Dated: _____          _____
                                 Richman, Acting P.J.

Filed 5/31/22  Allman v. Aldrich CA1/2 (unmodified opinion)
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THOMAS ALLMAN,<br><br>    Petitioner and Respondent,<br>v.<br>ADAM ALDRICH,<br><br>    Appellant. | A160808<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CVPT-20-73829) |

Thomas Allman filed a petition seeking civil harassment restraining orders against Adam Aldrich, and then dismissed the petition while Aldrich's anti-SLAPP special motion to strike was pending.  Aldrich sought fees under the anti-SLAPP statute and other relief, all of which the trial court denied.  Aldrich now appeals from the denial orders, and we shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A.    *Petition for Civil Harassment Restraining Orders*

On January 31, 2020, Thomas Allman (Plaintiff[1]), the former Sheriff of Mendocino County, petitioned for civil harassment restraining orders under Code of Civil Procedure section 527.6, using Judicial Council Form CH-100, a

---

[1] We sometimes use the term "Plaintiff" in referring to Allman, the petitioner below and respondent on appeal, and "Defendant" in referring to Aldrich, the respondent below and appellant here.

1

mandatory form.[2]  Plaintiff sought protection from Adam Aldrich (Defendant) for himself and his wife, including an order that on February 1, 2020 (the day after the petition was filed) Defendant be required to stay 300 yards from the Mendocino County fairgrounds from 3:00 pm to midnight, which was the place and time for Plaintiff's planned retirement party.[3]  Plaintiff checked the box on the form stating he wanted the court to "make . . . these orders now [to] last until the hearing without notice to [Defendant]," alleging that he feared for his and his wife's safety.  Plaintiff also checked the box requesting less than five days' notice for the hearing, alleging, "I feel there is a credible threat against me and the people of this community."

In his petition, Plaintiff alleged that over the past three years a stalker had followed him and his family members, "document[ed] our movements," and "caused sleepless nights and prevented several family outings."  Plaintiff had arranged for the stalking to be investigated while he was sheriff, and also after he retired.  Included in the report of the investigation was a video of the person Plaintiff believed to be the stalker, posting flyers in Ukiah that

---

[2] Statutory references are to the Code of Civil Procedure. "Harassment" is defined to include "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6, subd.(b)(3).)  A "course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual . . . .  Constitutionally protected activity is not included within the meaning of 'course of conduct.' "  (*Id.*, subd. (b)(1).)

[3] Plaintiff was Sheriff of Mendocino County for about 13 years until his retirement on December 28, 2019.  The party was apparently planned as a ticketed fundraiser to benefit the Mendocino County Search and Rescue Team.

contained allegedly false information about Plaintiff. Plaintiff believed the person in the video, and thus the stalker, was Defendant, because the person moved with Defendant's unusual gait. (Plaintiff had known Defendant since Defendant was a child.) Plaintiff had previously suspected that Defendant might be the stalker, because while Plaintiff was sheriff he had revoked Defendant's permit to carry a concealed firearm. Defendant had recently contacted the sheriff who succeeded Plaintiff by cell phone asking about the permit; the cell phone number was the same one that was used in one of the stalking incidents, providing further confirmation that Defendant was the stalker. Plaintiff stated it was his opinion that Defendant, who was working as a federally-contracted security guard, was "emotionally unbalanced and unstable." Plaintiff further stated, "If a restraining order is obtained, he can not legally possess a firearm,[4] and as such, would lose his security job. This is in the best manner of public safety. At this moment, we (Ukiah) has [*sic*] a mentally unstable person carrying a gun at a federal facility 'protecting' people. This has all of the necessary criteria for a disaster."

Plaintiff supported his petition with a declaration containing details about the alleged stalking. The declaration stated that in spring 2017, Plaintiff and his wife went to a party in Plaintiff's car. On the way home, they stopped at a supermarket where Plaintiff bought milk and dog food. Plaintiff later learned that someone had followed him home and videotaped him driving: the owner of a local publication called to tell him that someone had sent in a video of him driving home the night of the party, claimed to have seen him go into the supermarket, and knew that he had bought milk

---

[4] Under section 527.9, a person against whom a protective order is issued pursuant to section 527.6 is ordered "to relinquish any firearm in that person's immediate possession or control." (§ 527.9, subd. (b).)

3

and dog food. The person who sent the video also knew exactly how long he had been at the party.

The declaration stated that Plaintiff also learned that while he was driving home from the party, the person following him had made several anonymous calls to the highway patrol reporting that Plaintiff was driving 100 miles per hour. When the reports were investigated, it developed that the phone number used to call the highway patrol was a number Defendant had used to make non-anonymous calls to police and the sheriff's office; further, Defendant gave that number as his in an email to Plaintiff's successor as sheriff, Matthew Kendall. Plaintiff eventually listened to recordings of the calls to the highway patrol and confirmed that it was Defendant's voice.[5]

Plaintiff stated that these events "upset me enough that I requested and was approved for additional security equipment for my home."

Plaintiff stated that another event occurred in February 2019. After Plaintiff attended a party, he learned that flyers were posted in Fort Bragg and Ukiah showing a picture of his car parked at the party and alleging that he had been driving drunk. (Plaintiff stated these allegations were false.) He later learned that there was video footage of the person posting the flyers. The sheriff's office investigated, and it was reported to Plaintiff that the person in the video had been identified as Defendant, "based on his unique gait."

---

[5] Plaintiff stated in his declaration that he was informed that an investigation of the speeding allegations using time and location data from the informant's phone calls, determined that he was actually driving about 53 miles per hour.

Shortly after Plaintiff retired as sheriff in late December 2019, he learned that the new sheriff, Sheriff Kendall, had received an email from Defendant asking for a meeting to discuss a permit to carry a concealed firearm. In the email, Defendant gave his phone number and stated that he worked as a security officer in Ukiah and could not leave his post during work hours, which were Monday through Friday from 8:30 a.m. to 4:45 p.m. Then, on the afternoon of Thursday January 30, 2020, Plaintiff received a call from a lieutenant in the sheriff's department who said he had been doing a security check at the Mendocino County fairgrounds and had just seen Defendant there, in the same building where Plaintiff's retirement party was scheduled to be held on Saturday, February 1. The lieutenant reported that Defendant said he was at the fairgrounds performing community service. Plaintiff did not believe that, because of what Defendant had previously told Sheriff Kendall about his work hours, and because Plaintiff knew that community service could be scheduled on weekends to accommodate work schedules. Plaintiff also stated that he believed Defendant was "armed in his current security guard position."

Plaintiff stated that the stalking caused him and his family "an extreme amount of stress and concern for our safety over the past few years."

B.     *Ex Parte Hearing and Issuance of Temporary Restraining Order*

On the same day Plaintiff filed his petition, he also filed an ex parte application for a temporary restraining order (TRO), seeking essentially the same orders requested in the Form CH-100 request. Plaintiff's counsel, Erik Petersen, appeared at an ex parte hearing early that afternoon. The court's minutes state: "Court inquires services [*sic*] requirements re: today's hearing. [¶] Counsel Peters[e]n gives statements re: service via telephone 1/31/2020. [¶] Court has reviewed declaration and request filed. [¶] Court

5

finds sufficient evidence to grant TRO."[6]  A hearing on Plaintiff's petition was scheduled for February 13, 2020, with the TRO to expire at the end of the hearing.[7]

On February 13, by stipulation of the parties, the hearing was continued to mid-March, with the TRO to remain in effect until the new hearing date.

C.    *Response to Civil Harassment Petition and Anti-SLAPP Motion*

On February 20, Defendant filed his response to the civil harassment petition, and requested an award of attorney fees and court costs under section 527.6, subdivision (s).  Defendant's attorney, Mark Clausen, signed the response form, stating that Defendant claimed First and Second Amendment protection for the conduct alleged in the petition.[8]

Also on February 20, Defendant filed an anti-SLAPP motion to strike Plaintiff's petition for civil harassment restraining orders under section 425.16, subdivision (b)(1), and to recover attorney fees under section 425.16,

---

[6] Some months later, Petersen stated in a declaration that he called Defendant before the hearing on the TRO to inform him that the petition had been filed and to give him the date and time of the TRO hearing.  He further stated, "I do not remember if I spoke to [Defendant] or was only able to leave him a voicemail."

[7] Subsequent dates are in 2020 unless otherwise stated.

[8] In the space on the form where Defendant would normally have signed to indicate that the submission was made under penalty of perjury, Clausen inserted and signed the following statement:  "Because the petition alleges 'stalking' which is a wobbler and 'harassment,' which is a misdemeanor, and includes other allegations that could be considered criminal conduct, I have instructed my client to exercise his 5th Amendment rights pending trial in this case and hearing on his anti-SLAPP motion."

6

subdivision (c)(1).[9]  The motion was supported only by a declaration from Clausen; there was no declaration from Defendant himself.

D.    *Further Proceedings in the Trial Court*

Plaintiff dismissed his petition for civil harassment restraining orders at the beginning of the continued hearing in March.  Defendant's motion to strike was then continued at the request of Defendant's counsel.

After Plaintiff dismissed his case, Defendant filed an amended notice of his anti-SLAPP motion, stating that the civil harassment petition arose from his protected activity in posting flyers about Plaintiff and otherwise disseminating information about him; in applying for a concealed weapon permit and complaining about the denial of the application; in filming Plaintiff and posting the videos to social media; and in being present at the Mendocino County fairgrounds during normal business hours on January 30.

Defendant also filed a motion for attorney fees and costs under section 527.6 (the civil harassment statute) and section 1021.5 (the private attorney general statute).  He claimed entitlement to fees as a prevailing party under section 527.6 because the petition was meritless and brought in bad faith as retaliation for his exercising his First Amendment right to criticize Plaintiff, and under section 1021.5 because his assertedly successful defense of the action advanced important First Amendment rights.

Plaintiff, now represented by county counsel, opposed the motions.  In a supporting declaration, Plaintiff stated that at the time he sought the civil harassment restraining orders, he believed that Defendant had no good reason to be at the county fairgrounds on January 30 and he feared that

_____

[9] The anti-SLAPP statute was enacted to deter " 'strategic lawsuits against public participation,' " or " 'SLAPP suits.' " (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.)

7

Defendant's presence was an incident of stalking and that Defendant, who he believed to be armed in connection with his job as a security officer, "would take some violent action against me or someone else at my retirement party"; his "most pressing concern" in filing the petition was preventing such an incident at the party. Plaintiff further stated that after the petition had been filed he learned that Defendant had in fact been present at the fairgrounds for the purpose of performing community service. He still had concerns about Defendant stalking him, but because the stalking incidents were not recent and the party had taken place, he eventually decided to dismiss the petition.

In his reply to the motion for fees under section 527.6, Defendant argued that the ex parte TRO process authorized by section 527.6 is unconstitutional on its face and as applied in his case, because it is a violation of a defendant's due process rights to issue a TRO without prior notice to the defendant.

At the hearing on Defendant's motions, the trial court denied the request for attorney fees under the anti-SLAPP statute on the grounds that Defendant had not met his burden to show that Plaintiff's cause of action arose from protected activity. The court acknowledged that Defendant was the prevailing party with respect to his request for fees under section 527.6, but stated it was exercising its discretion to not award fees on the basis of its findings that the petition was filed in good faith and that Plaintiff more than likely would have been successful had he pursued the civil harassment case. The court overruled Defendant's objections to Plaintiff's declarations, stating, "the court can consider hearsay in . . . connection with a civil harassment proceeding." And the court determined that it lacked jurisdiction to address Defendant's constitutional challenge to the TRO and provisions of the civil harassment statute because the petition had been dismissed.

A written order was entered after the hearing, and Defendant timely appealed.

## DISCUSSION

In addition to challenging the denial of his motions for fees, Defendant contends on appeal that the TRO procedures of section 527.6 violate the right to due process by authorizing the issuance of a TRO without prior notice and an opportunity to be heard. We begin with the denial of the motion for attorney fees under the anti-SLAPP statute.

A.      *Attorney Fees Under the Anti-SLAPP Statute*

      1.      *Applicable Law and Standard of Review*

"The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (§ 425.16, subd. (a).) Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' [citation], the Legislature sought ' "to prevent SLAPPs by ending them early and without great cost to the SLAPP target" ' [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary judgment-like procedure at an early stage of the litigation." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)

Under the anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has

9

established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Thus, under section 425.16, a two-step analysis determines whether a cause of action is subject to a special motion to strike. (*Navellier v. Sletten* (2002) 29 Cal.4th 83, 88-89 (*Navellier*).) In conducting its two-step analysis, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

The first step of the analysis is deciding "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation.] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' " (*Navellier*, *supra*, 29 Cal.4th at p. 88.) Those categories are: "any written or oral statement or writing made before [any] official proceeding authorized by law" (§ 425.16, subd. (e)(1)); "any written or oral statement or writing made in connection with an issue under consideration or review by [any] official proceeding authorized by law" (*id.*, subd. (e)(2)); "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" (*id.*, subd. (e)(3)); and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e)(4).) "[I]n some cases . . ., whether the defendant's act qualifies as one in furtherance of protected speech or petitioning will depend on whether the defendant took the action for speech-related reasons." *(Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871,

10

889 (*Wilson*).) In such cases, the defendant may introduce evidence establishing such reasons. (*Ibid.*)

Once a defendant has satisfied the prong-one burden of demonstrating that the targeted action arises from protected activity, the court moves to the second step of the analysis. The defendant need not prove the plaintiff's subjective intent, or show that the challenged cause of action did in fact have a chilling effect on defendant's exercise of the rights of speech and petitioning. (*Navellier, supra,* 29 Cal.4th at p. 88.)

If the court finds that the defendant has made the required showing with respect to prong one, the court proceeds to the second step, which requires it to "determine whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Navellier, supra,* 29 Cal.4th at p. 88.) "[T]o establish the requisite probability of prevailing [citation], the plaintiff need only have ' "stated and substantiated a legally sufficient claim." ' [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citations.]" (*Navellier, supra,* at pp. 88-89.)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra,* 29 Cal.4th at p. 89.)

A "prevailing defendant" on an anti-SLAPP motion is entitled to recover attorney fees and costs. (§ 425.16, subd. (c).) In a case like this one, where the plaintiff voluntarily dismisses the complaint after an anti-SLAPP motion has been filed, the court considers the merits of the anti-SLAPP motion to determine whether the defendant is entitled to an award of

11

attorney fees and costs, even though the court lacks jurisdiction to grant or deny the underlying anti-SLAPP motion. (*Moore v. Liu* (1999) 69 Cal.App.4th 745, 751 & fn. 3.)

We review de novo the trial court's decision that Defendant would not have prevailed on his anti-SLAPP motion. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

2.      *The Anti-SLAPP Motion*

In determining whether the civil harassment petition arose from protected conduct, we consider the elements of Plaintiff's claim, the actions that Plaintiff alleged to establish those elements, and whether those actions are protected. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1015.) Defendant has the burden of identifying allegations of protected activity and the claims for relief that are supported by those allegations. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.) Even if a cause of action is " 'triggered' by protected activity," the cause of action does not necessarily arise from protected activity: "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier*, *supra*, 29 Cal.4th at p. 89.) In our analysis, we must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park v. Board of Trustees of the California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*).) "If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.)

12

To determine whether the challenged claims arise from protected activity, we consider the pleadings and "affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park, supra,* 2 Cal.5th at p. 1067.) Here, Plaintiff's submissions consist of the civil harassment petition, and two declarations from Plaintiff, one supporting the petition and one opposing the anti-SLAPP motion. Defendants' submissions consist of the response to the petition, which was signed by attorney Clausen, and the Clausen declaration that was submitted in support of Defendant's anti-SLAPP motion. Defendant concedes that we may consider Plaintiff's petition and declarations in conducting our prong one analysis. He argues that we should consider Clausen's sworn statements as well, and we do, but their value is limited as we shall explain.

Defendant contends that the civil harassment petition arose entirely from his protected conduct, which he characterizes as observing, following, and photographing Plaintiff while Plaintiff was in public to investigate rumors of his drinking and driving; making calls to 911; communicating anonymously to the Advertiser and by means of flyers about Plaintiff's reckless driving; communicating about his permit to carry a concealed firearm; and his presence at the fairgrounds on January 30. We consider these contentions in turn, and conclude that Defendant has not shown that Plaintiff's civil harassment claim arises from protected conduct.

Although Defendant claims that his following, photographing, and filming Plaintiff "in order to investigate and report on the rumors of his drinking and driving" is protected conduct, there is no evidence in the record that investigating and reporting was the purpose of the alleged conduct.

13

Defendant has not admitted or denied any of the conduct alleged in the civil harassment petition, and has presented no evidence that he engaged in or even contemplated any investigation or reporting. (See *Wilson*, *supra*, 7 Cal.5th at p. 889 [defendant may introduce evidence establishing his reasons for acting where those reasons determine whether the action is "in furtherance of protected speech or petitioning"].) As the trial court observed, there was no admissible evidence that Defendant engaged in any protected activity, because he did not submit a declaration. The only "evidence" that Defendant submitted to support his anti-SLAPP motion was a declaration by Clausen, which described conversations that Clausen had with Defendant and others. The trial court correctly disregarded the declaration as hearsay.[10]

Defendant contends that the hearsay in Clausen's declaration describing statements he made to Clausen is "admissible to show [his] state of mind to explain why he did certain things alleged by [Plaintiff]." He gives just one example: a portion of Clausen's declaration that involves multiple layers of hearsay (Clausen recounts his recollection of Defendant's description to him in 2014 or 2015 of a telephone call between Defendant and Plaintiff), and supposedly explains his subsequent "protected conduct in allegedly investigating and reporting on [Plaintiff's] drinking and driving

---

[10] Defendant argues that Clausen's declaration is admissible in full because Plaintiff failed to object to it. Defendant is mistaken. Failure to object to evidence may waive a claim of error on appeal as to the admission of the evidence (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 725), but Defendant cites no authority holding that the failure to object precludes the court from determining its admissibility or results in the automatic admission of evidence.

habits."[11] The argument is meritless. In the absence of any evidence that Defendant was in fact investigating Plaintiff's drinking and driving habits, the declaration is no substitute for evidence that the civil harassment claim arose from protected conduct.

In arguing that the stalking alleged in Plaintiff's civil harassment petition is actually protected conduct, Defendant relies primarily on two cases, *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049 (*Tichinin*) and *D.O. v. Richey* (Or.Ct.App. 2019) 456 P.3d 348 (*D.O.*), both of which are distinguishable.

In *Tichinin*, a private attorney sued the City of Morgan Hill under 42 United States Code section 1983 after the city council adopted a resolution condemning him for hiring a private investigator to surveil the city manager and then denying he had done so. (*Tichinin, supra*, 177 Cal.App.4th at p. 1055.) In reversing the trial court order granting the city's anti-SLAPP motion, the Court of Appeal concluded that "prelitigation investigation to support a potential claim" can "fall within the protected 'breathing space' " of the right to petition. (*Id.* at p. 1071.) Defendant here suggests that the following, filming, and photographing conduct alleged in Plaintiff's petition is similar to the conduct at issue in *Tichinin*. But in *Tichinin*, unlike the case before us, there was *evidence* that surveillance of a public official was part of a prelitigation investigation, which the court concluded was protected conduct. (*Id.* at p. 1064.) In *Tichinin*, the private attorney, at a client's behest, hired a private investigator to conduct surveillance on a public

---

[11] Defendant also argues that this explains his attempt to regain a permit to carry a concealed weapon but that is irrelevant. As we will explain, the civil harassment claim does not arise from Defendant's protected efforts to obtain a permit.

official. (*Id.* at p. 1057.) There was evidence that one of the attorney's clients had retained him to defend against a lawsuit based on her statements about an inappropriate relationship between the city manager and the city attorney, and that the purpose of the surveillance was to gather evidence and information as to whether the city manager and city attorney were having a romantic affair. (*Id.* at pp. 1056-1057.) Further, there was evidence that the surveillance occurred while the city manager was attending a conference in his official capacity, that an improper relationship between the city manager and city attorney would be a matter of public concern implicating a conflict of interest that affected other clients of the attorney, and that if the investigation indicated that the city manager and the city attorney were having an affair, the attorney would report the matter to members of the city council and seek relief for his clients. (*Id.* at pp. 1056-1057, 1071, 1072, 1077-1078.) *Tichinin* does not help Defendant, who has presented no evidence at all about his conduct, let alone its purpose.

The second case on which Defendant relies is *D.O.*, *supra*, 456 P.3d 348, 351, an Oregon case in which the appellate court reversed a stalking protective order that had been issued to a police chief against a "self-described citizen journalist and police watchdog" who was known to film on-duty police officers and post the videos online. (*Id.* at pp. 351, 352.) Defendant mischaracterizes the case. Contrary to Defendant's assertion, the appellate court in *D.O.* did *not* conclude that the alleged stalker's conduct in following and filming a police chief while she was off duty and shopping with her family at a supermarket was conduct protected by the First Amendment. *D.O.* concerned a 30-second long, apparently unexpected chance encounter at a supermarket between the defendant and the police chief during which the defendant took out a cell phone to film the police chief. (*Id.* at pp. 353, 361.)

16

The appellate court in *D.O.* concluded that although the defendant's verbal interaction with the police chief during the brief encounter was protected conduct, the filming was not. (*Id.* at p. 361.) In any event, the contact at the supermarket in *D.O.* was unlike Defendant's observation of Plaintiff at the supermarket here, which allegedly began when Defendant followed Plaintiff from a party to the store, and included the monitoring of Plaintiff's purchases, thus reflecting stalking behavior.[12]

In addition to arguing that the alleged following and filming of Plaintiff constitute protected conduct, Defendant argues that the calls he allegedly made to the highway patrol to report Plaintiff's reckless driving are protected conduct, pointing to authority that reports to police are protected under the anti-SLAPP statute, even if the reports are allegedly false (as Plaintiff contends), unless the defendant concedes the falsity of the reports, which is not the case here. Defendant also argues that the alleged anonymous communications with a local publication and anonymous posting of flyers concerning Plaintiff's driving are protected activity. But Plaintiff's stalking claim does not arise from the calls to the highway patrol, or from the communications with the local publication, or from the posting of flyers. Instead, these actions are described at some length in Plaintiff's declaration and briefly mentioned in the civil harassment petition to provide evidentiary support for the stalking claim by showing *how* Plaintiff learned that he was

---

[12] The appellate court in *D.O.* noted that "photographing and filming government officials *while they are conducting official duties in public*" is a form of expression protected by the First Amendment. (*D.O.*, *supra*, 456 P.3d at p. 359, fn. 14, italics added.) And in his brief, Defendant cites several cases that stand for that same proposition. Those cases do not help Defendant, because the filming referenced in Plaintiff's declaration occurred while Plaintiff was off-duty and in his own vehicle.

being followed on more than one occasion, and *why* he believed Defendant was the person following him. (See *Park*, *supra*, 2 Cal.5th at p. 1064 [distinguishing activities that form the basis of the claim from those that "merely . . . provide evidentiary support for the claim"].)

Defendant argues that his communications with Plaintiff and others at the Sheriff's office about restoration of his permit to carry a concealed firearm are privileged as petitioning for redress of grievances. Again, these petitioning activities, do not form the basis of Plaintiff's civil harassment claim, and are mentioned only incidentally in the petition and in an email attached to Plaintiff's declaration, described above, where Plaintiff gave his work schedule and phone number to Sheriff Kendall as part of a request for a meeting. The fact that the email referred to "a [concealed carry permit] matter" does not turn the stalking claim into a claim arising from protected conduct that arose from any petitioning activity undertaken by Defendant. There is no evidence to support such a conclusion.

Finally, Defendant argues that the stalking claim arose in part from his presence at the fairgrounds on January 30, which is accurate.[13] Defendant suggests that his presence at the fairgrounds was protected conduct because he was there to perform court-ordered community service work in an unrelated case. He cites no authority to suggest that his presence is therefore protected activity under the anti-SLAPP statute. He points out, correctly, that the unrelated case against him, for which he was ordered to perform community service, is an "official proceeding" but he fails to show

---

[13] Without providing any supporting evidence, Defendant speculates that Plaintiff was concerned about his presence at the fairgrounds because Plaintiff believed he was there to prepare for disseminating flyers or "speaking out" at the retirement party.

that his presence at the fairgrounds on January 30 constituted a "written or oral statement or writing" made at or in connection with an official proceeding, which would be required for his presence to constitute protected conduct under subdivision (e) of section 425.16. The case Defendant cites as authority, *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, does not help him. Defendant mischaracterizes the case as holding that any action taken in connection with a judicial proceeding is per se protected by the anti-SLAPP statute. To the contrary, the portion of *Contreras* on which Defendant relies stands for the proposition that communicative acts by an attorney as part of their representation of a client in in a judicial proceeding are protected petitioning activity.[14] (*Id.* at pp. 408-409.)

In sum, we conclude that the petition for a civil harassment restraining order in this case is based on allegations of stalking, which is not protected activity. This means that the anti-SLAPP motion fails on prong one; accordingly, we do not reach the second prong of the analysis, which would require deciding whether Plaintiff established a probability of prevailing on his petition. The failure of the anti-SLAPP motion means that Defendant is not entitled to fees under section 425.16, subdivision (c).

B.  *Due Process Challenge to TRO Provisions in Section 527.6*

As we noted above, the trial court concluded that it lacked jurisdiction to consider Defendant's challenge to the constitutionality of the TRO

---

[14] Defendant argues that his statement to a lieutenant at the fairgrounds concerning his reason for being there is protected conduct as a statement to the police. We have no basis in evidence to conclude that the harassment claim arose from the statement to the lieutenant, as opposed to Defendant's mere presence at the fairgrounds just two days before the scheduled retirement party, at a time Defendant had reported he could not leave his workplace.

19

procedure set forth in section 527.6.  Defendant argues that the trial court erred in reaching that conclusion, and asks us to rule that the TRO provisions are unconstitutional on their face and as applied to this case because they violate his constitutional due process rights.

Section 527.6 provides that upon filing a petition for civil harassment restraining orders, the petitioner may obtain a temporary restraining order, "with or without notice, based on a declaration that, to the satisfaction of the court, shows reasonable proof of harassment of the petitioner by the respondent, and that great or irreparable harm would result to the petitioner."  (§ 527.6, subd. (d).)  A request for a TRO without notice "shall be granted or denied on the same day that the petition is submitted to the court."  (*Id*., subd. (e).)

As this court has recognized, the procedure for obtaining a TRO under section 527.6 is "[s]o informal . . . that it does not even have to afford due process protections to the person against whom the TRO is directed.  For example, no notice must be given to the person sought to be restrained before the TRO is issued. . . .  The TRO requires only that the applicant show 'reasonable proof of harassment,' and then only by affidavit."  (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 652 (*Thomas*).)

But Defendant cites no authority holding that the lack of due process protections in the TRO provisions of section 527.6 makes those provisions unconstitutional.  (Compare *Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 520-521 [noting that the purpose of section 527.6 " ' "is to provide quick relief to harassed persons" ' " by means of a "quick, simple and truncated procedure," and that the statute "offset[s] the expedited procedures" with limitations that safeguard those charged with harassment].)

Defendant contends that this court recognized in *Thomas* that the TRO provisions of section 527.6 are unconstitutional, and asks us to "finish what [we] started in *Thomas* . . . and strike down the unconstitutional TRO provisions in [section 527.6.]" We do not read *Thomas* as reaching any conclusion regarding the constitutionality of the TRO procedure. The point of the discussion in *Thomas* was that although the anti-SLAPP statute applied to a petition for a civil harassment restraining order under section 527.6, the statute did not apply to an application for a TRO under section 527.6, because a request for such a TRO was not a " 'cause of action' under the anti-SLAPP statute." (*Thomas, supra,* 126 Cal.App.4th at pp. 652-653.) *Thomas* also made the point that because a TRO under section 527.6 is typically issued ex parte and lacks due process protections, the granting of a TRO does not reflect on the merits of the underlying dispute. (*Id.* at p. 664, fn. 21.)

We decline to hold that the TRO provisions are facially unconstitutional, because the statute authorizes issuance of a TRO without notice only where a declaration has shown, to the satisfaction of the trial court, reasonable proof that the respondent has harassed the petitioner and reasonable proof that great or irreparable harm would result to the petitioner. (§ 527.6, subd. (d); see *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70* (1974) 415 U.S. 423, 439 ["[e]x parte temporary restraining orders are no doubt necessary in certain circumstances . . . but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"]; see also *In re L.W.* (2020) 44 Cal.App.5th 44, 51 [error to issue TRO under § 527, subd. (c), against juvenile charged with sexual assault where

"the People presented no evidence of emergency or other urgency and made no attempt to give appellant prior notice of their intent to seek" the TRO].) [15]

Nor do we conclude that Defendant has demonstrated that the TRO provisions of section 527.6 are unconstitutional as applied to him. Defendant has forfeited this argument by failing to support it with citations to the record. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) In the trial court, the as-applied challenge rested on Defendant's contention that "there was no showing whatsoever that affording him notice and an opportunity to respond <u>before</u> the TRO issued would have posed a danger to [Plaintiff] or his family or the community at large." On appeal, Defendant states that Plaintiff's papers did not claim there were grounds to shorten or waive notice. Defendant contends that Plaintiff sought the TRO to prevent him from attending and speaking out at Plaintiff's retirement party, which did not constitute urgency justifying dispensation with proper notice. The record is to the contrary.

In his request for restraining order Plaintiff stated that he wanted the court to issue orders to last until the hearing without notice to Defendant because he feared for his safety and his wife's safety. And Plaintiff requested a shortened notice period on the grounds that he believed there was a credible threat against him and the people of the community. In his petition and supporting declaration, Plaintiff alleged facts to support these requests, as we discussed above. Further, Defendant's contention that Plaintiff sought to prevent him from speaking out at the retirement party is speculation,

---

[15] As a general matter, a TRO issued under section 527.6 remains in effect until the hearing on the petition, but the court may modify or terminate the TRO before the hearing. The hearing is typically held within 21 to 25 days of the filing of the petition for TRO, although the hearing may be continued. (§ 527.6, subds. (f), (g), & (p).)

unsupported by record evidence. Plaintiff stated in his declaration that at the time he filed his petition, he feared that Defendant's presence at the fairgrounds on January 30 was another incident of the stalking he had alleged, and that Defendant would "take . . . violent action" against him or someone else at the retirement party.

In sum, we reject Defendant's due process challenges.[16]

C.    *Claims for Attorney Fees Under Sections 527.6 and 1021.5*

As we explained above, the trial court denied Defendant's motion to recover his attorney fees and costs under sections 527.6 and 1021.5. Defendant's argument that the trial court erred in denying the motion consists of two sentences in which Defendant contends that because the anti-SLAPP fee provision applies only to his motion to strike, this court must reverse the order denying fees under sections 527.6 and 1021. 5 "to compensate [him] for his success on *other issues* such as his due process claim." Yet Defendant does not identify any "other issues" besides his due process claim. Because he has not succeeded in his due process challenge, his argument fails.

## DISPOSITION

The challenged orders are affirmed. Aldrich's motion for injunction is denied. Allman is entitled to recover his costs on appeal.

---

[16] After briefing of this appeal was completed, Defendant filed a motion arguing that if this court ruled in his favor on his due process challenge to the TRO provisions of section 527.6, we should enjoin the enforcement of those provisions. Plaintiff opposed the motion, and we took it under submission for consideration with the merits. Because we rule against Defendant on his due process challenge, we deny the motion.

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A160808, *Allman v. Aldrich*

24